**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Palm Beach Division)**

Case No. _____

RIDGE POINT CAPITAL, LLC, a Texas
limited liability company,

    Plaintiff,

v.

MIROSLAV ZECEVIC, an individual, and
INTERNATIONAL FINANCE GROUP
EXCHANGE a/k/a IFGX or IFGX.COM or
IFGX.COM INC.,

    Defendants.
_____/

## COMPLAINT

Plaintiff Ridge Point Capital, LLC ("RPC"), through its undersigned counsel, hereby sues Defendants Miroslav Zecevic ("Zecevic") and International Finance Group Exchange a/k/a IFGX or IFGX.Com or IFGX.Com Inc. ("IFGX") (collectively, Zecevic and IFGX, "Defendants"), and alleges:

### SUMMARY OF THE CASE

1. RPC owns 98,760,911 shares of capital stock (the "Shares") in the company Silverton Adventures Inc.

2. Defendants represented to RPC that (i) Zecevic had the ability to "dematerialize," or sell, the Shares to a third-party buyer, such as a market maker, equity fund or broker dealer; (ii) Zecevic would pay RPC an agreed-to portion of the sales proceeds; and (iii) that the entire sales process could be done quickly.

3. As a result of Defendants' representations, RPC "sold" the Shares to Zecevic in a

1

Stock Purchase Agreement dated July 14, 2021, a copy of which is attached as Exhibit A.

4. Pursuant to the Stock Purchase Agreement, RPC would deliver the Shares to Zecevic, who was required to (i) promptly dematerialize (*i.e.*, sell, clear or liquidate) the Shares with a third-party buyer (*i.e.*, market maker, equity fund or broker dealer); and (ii) promptly pay RPC 65% of the received funds, which RPC expected to be at least $250,000-$300,000.

5. However, as of this filing approximately 14 months later and despite RPC's repeated demands as of September 2021 for Zecevic to promptly clear/sell the shares or to promptly return the shares to RPC, Zecevic has neither dematerialized/cleared nor returned the Shares to RPC.

6. In the interim, the value of the Shares has plummeted from approximately $385,000 around the time of the Stock Purchase Agreement to a range of approximately $60,000-$70,000 as of this filing.

7. Therefore, RPC has had no other choice but to file this action to recover its monetary losses for the Shares' inexcusable loss in value and also to physically recover the certificate of the Shares that Defendants have failed to return to RPC.

## THE PARTIES

8. RPC is a limited liability company formed under the laws of Texas with its principal place of business in Texas. RPC's sole member also resides, and is domiciled, in Texas. Therefore, for purposes of diversity jurisdiction, RPC is a citizen of Texas.

9. Zecevic is an individual who works and resides, and is domiciled in, West Palm Beach, Florida. Therefore, for purposes of diversity jurisdiction, Zecevic is a citizen of Florida.

10. IFGX is a company that, upon information and belief, is not registered to do business in Florida, but, upon information and belief, operates in Florida, including within this

District.  On IFGX's website (IFGX.Com), there are no addresses listed for the company and no other contact information other than an (833) phone number.  Phone numbers with an (833) area code have been associated with scams or fraudulent companies.  The undersigned has also performed a business entity search and can confirm that IFGX is not listed as a Texas corporation, a Texas limited liability company or other Texas entity that would defeat diversity jurisdiction here.

11.     There may be other parties who are not named as defendants herein, but who may be liable to RPC.  By not naming such parties at this time, RPC is not waiving its right to amend or separately sue to add such parties.

12.     In addition, there may be other claims that are not included as initial claims herein, but which may be viable as this action proceeds.  By not including such claims at this time, RPC is not waiving its right to amend to add such claims.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because: (i) the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees; and (ii) there is complete diversity of citizenship.

14.     This Court has personal jurisdiction over Defendants pursuant to Florida Statute § 48.193(1)(a)(1) because Defendants conduct business, reside in Florida and/or have an office in Florida.

15.     This Court has personal jurisdiction over Defendants pursuant to Florida Statute § 48.193(1)(a)(2) because they committed tortious acts which touched, concerned and affected Florida.

16.     This Court also has personal jurisdiction over Zecevic pursuant to Florida Statute

§ 48.193(1)(a)(7) because he breached a contract that required performance in Florida.

17. This Court also has personal jurisdiction pursuant to the Florida jurisdiction clause in the applicable Stock Purchase Agreement.

18. Venue is proper in this District under 28 U.S.C. § 1391 because at all material times, certain transactions, acts, practices, business and the causes of action alleged herein arose in this District.

19. Venue is also proper in this District pursuant to the venue clause in the applicable Stock Purchase Agreement.

### **FACTUAL ALLEGATIONS**

20. Zecevic promotes himself to penny stock owners as someone who can clear/sell their penny stock shares and pay penny stock owners from the cleared funds.

21. Zecevic is the President of IFGX, which purportedly provides the service of clearing/selling penny stocks and provides other financial and securities-related services.

22. Pursuant to a written stock certificate dated May 20, 2021 of company Silverton Adventures Inc., RPC is the owner of 98,760,911 shares of capital stock (again, the "Shares") in penny stock company Silverton Adventures Inc.

23. Before executing the Stock Purchase Agreement with Zecevic in July 2021, RPC had to complete an application with Zecevic's company IFGX a month earlier in June 2021.

24. As part of the application process in June 2021, including, but not limited to, June 18, 2021, IFGX represented to RPC, among other things, that (i) there would be a purchaser of the Shares via a Stock Purchase Agreement who had the ability to clear/sell the Shares to a third-party buyer, such as a market maker, equity fund or broker dealer; and (ii) it would take no more than 4 to 6 weeks for this to happen.

25. Between June 18, 2021 and July 12, 2021, and thus before the execution of the Stock Purchase Agreement, Zecevic, individually and also on behalf of IFGX, and RPC's managing member, Michael Chavez, spoke at least one or two times, during which Zecevic represented to RPC that he absolutely had the ability to clear/sell the Shares to a third-party market maker, equity fund, broker dealer or other third party, and could get this done quickly.

26. However, as it turned out, Defendants' above representations were patently false because Zecevic has been unable to clear/sell the Shares through a third party during the last 14 months through today.

27. Similarly, before the execution of the Stock Purchase Agreement, Defendants knowingly omitted to disclose to RPC that: (i) Zecevic may not be able to ever clear/sell the Shares to a third party; and (ii) the process could take many months to potentially never taking place.

28. However, the following were the stark realities according to Zecevic's own admissions to RPC: (i) Zecevic did not sell/clear the Shares to anyone; and (ii) therefore the process to clear/sell the Shares never occurred.

29. As a result of Defendants' representations and omissions, RPC and Zecevic signed the Stock Purchase Agreement dated July 14, 2021. Zecevic, the President of IFGX, was the purchaser of the Shares under the Stock Purchase Agreement.

30. Pursuant to the Stock Purchase Agreement, three primary things were supposed to occur: (i) RPC would deliver the Shares to Zecevic; (ii) Zecevic would then clear/sell the Shares to a third party, such as a market maker, equity fund or broker dealer; and (iii) Zecevic would pay RPC 65% of the received funds as the purchase price.

31. RPC promptly delivered the Shares to Zecevic, through a designated entity to which Zecevic instructed RPC to directly send the Shares via Federal Express.

32. In September and October 2021, and thus after the previously promised 4-6-week window of time for clearing/selling the Shares, RPC demanded to Zecevic to immediately clear/sell the Shares or alternatively to immediately return the Shares to RPC.

33. It was at this time that Zecevic informed RPC for the very first time that the process to clear/sell the Shares would likely take at least 4 months. RPC was shocked and, again, demanded to Zecevic to immediately clear/sell the Shares or alternatively to immediately return the Shares to RPC. RPC also made the same demands to IFGX because (i) IFGX was involved in the entire process from the beginning application; (ii) Zecevic is IFGX's President; and (iii) Zecevic, individually and also on behalf of IFGX, instructed RPC to contact manager Irene Black of IFGX for processing the return of the Shares.

34. However, Defendants have completely ignored RPC's repeated demands to sell/clear the Shares and/or to return the Shares to RPC. Therefore, incredibly as of this filing approximately 14 months after the Stock Purchase Agreement and despite RPC's repeated demands as of September 2021 through today for Zecevic to immediately clear/sell the shares or for Defendants to immediately return the shares to RPC, Zecevic has neither cleared the Shares nor have Defendants returned the Shares to RPC.

35. In the interim, the value of the Shares has plummeted from approximately $385,000 around the time of the Stock Purchase Agreement to a range of approximately $60,000-$70,000 as of this filing.

36. Given Defendants' egregious misconduct, RPC is entitled to recovering from Defendants the lost value of the Shares and the physical return of the certificate representing the Shares themselves. RPC is also entitled to recovery of its incurred reasonable attorneys' fees and costs under the prevailing party provision of the Stock Purchase Agreement.

37. In the event that Zecevic actually dematerialized the Shares and tried to cover up the sales transaction by saying, among other things, he needed more time to clear/sell the Shares, RPC would be entitled to 65% of the received proceeds.

38. RPC has engaged the undersigned firm and is obligated to pay them a reasonable fee.

39. RPC has also complied with all conditions precedent to filing suit.

## COUNT I
**(Breach of Contract – Against Zecevic)**

40. RPC repeats paragraphs 1, 3-22, and 29-39, as if fully set forth herein.

41. RPC and Zecevic executed the Stock Purchase Agreement, which required Zecevic to promptly dematerialize (*i.e.*, sell, clear or liquidate) the Shares with a third party (*i.e.*, market maker, equity fund or broker dealer) and pay RPC 65% of the received proceeds.

42. RPC expected to receive at least approximately $250,000-$300,000 from Zecevic.

43. However, Zecevic has failed to sell/clear the Shares to anyone; has failed to pay RPC one penny for the Shares; and has failed to return the Shares to RPC.

44. Alternatively, in the event that Zecevic actually dematerialized the Shares and tried to cover up the transaction by saying, among other things, to RPC that he needed more time to do such, Zecevic has still failed to pay RPC one penny for the Shares and RPC would be entitled to 65% of the received proceeds.

45. Based on the above, Zecevic has breached the Stock Purchase Agreement.

46. As a result of Zecevic's breaches, RPC has incurred substantial damages.

WHEREFORE, RPC asks this Court to enter a judgment against Zecevic for: (i) monetary damages in an amount according to proof; (ii) return of the Shares; (iii) prejudgment interest; (iv) reasonable attorneys' fees and costs; and (v) such other and further relief that is just and proper.

## COUNT II
**(Fraudulent Inducement – Against Defendants)**

47. RPC repeats paragraphs 1-39, as if fully set forth herein.

48. Defendants, by acts of both omission and commission described above in paragraphs 2 and 23-28, made false statements to RPC concerning material facts about the Shares.

49. Defendants knew at the time the statements were made that they were false.

50. Defendants intended that RPC would be induced into executing the Stock Purchase Agreement, including all of its provisions that were by definition a product of fraud, by relying upon the statements of fact made by Defendants.

51. RPC reasonably and justifiably relied on the statements of fact made by Defendants.

52. As a direct and proximate result of RPC's reliance on the statements made by Defendants, RPC has suffered substantial damages.

WHEREFORE, RPC asks this Court to enter a judgment against Defendants for: (i) monetary damages in an amount according to proof; (ii) return of the Shares; (iii) prejudgment interest; and (iv) such other and further relief that is just and proper.

## COUNT III
**(Negligent Misrepresentation– Against Defendants)**

53. RPC repeats paragraphs 1-39, as if fully set forth herein.

54. Defendants were aware of, and consented to, the misrepresentations, omissions, and concealment of the truth described above in paragraphs 2 and 23-28.

55. Defendants knew, or acted in reckless disregard, that the misrepresentations, omissions and concealment of the truth, made as part of their scheme against RPC, were false or materially misleading at the time they were made.

56. Defendants, based on their communications with RPC, and from the statements

made by RPC, knew of RPC's objective of locating someone who had the ability to monetize the Shares and pay RPC an agreed-to amount from the monetized proceeds. Notwithstanding, Defendants concealed their misconduct by the above-described commissions and omissions.

57. Regarding the commissions and omissions described above, Defendants were negligent in not disclosing all material facts to RPC.

58. Defendants owed RPC a duty to be truthful and to deal honestly and fairly with it.

59. As described above, Defendants negligently breached these duties.

60. As a result of Defendants' negligent breaches of these duties, RPC has suffered substantial damages.

WHEREFORE, RPC asks this Court to enter a judgment against Defendants for: (i) monetary damages in an amount according to proof; (ii) return of the Shares; (iii) prejudgment interest; and (iv) such other and further relief that is just and proper.

## COUNT IV
**(Fraud – Against Defendants)**

61. RPC repeats paragraphs 1-39, as if fully set forth herein.

62. Defendants knowingly misrepresented to RPC that: (i) Zecevic had the ability to clear/sell the Shares to a third party, such as a market maker, equity fund or broker dealer; and (ii) the process would be done quickly, including at most a range of 4 to 6 weeks.

63. Similarly, Defendants knowingly omitted to disclose to RPC that: (i) Zecevic may not be able to ever clear/sell the Shares to a third-party market maker, equity fund, broker dealer or other third party; and (ii) the process could take many months to potentially never taking place.

64. However, the following were the stark realities: (i) Zecevic did not sell/clear the Shares to anyone; and (ii) therefore the process to clear/sell the Shares never occurred.

65. These above facts were material to RPC regarding its decision to enter into the

9

Stock Purchase Agreement, including all of its provisions that were by definition a product of fraud.

66. Regarding the above material misrepresentations and omissions, Defendants knew that these material misrepresentations and omissions were false and/or misleading at the time they communicated to or withheld such information from RPC.

67. RPC would not have entered into the Stock Purchase Agreement if RPC had known of these material misstatements and omissions.

68. RPC reasonably relied upon these material misstatements.

69. Defendant's misstatements and omissions were kept confidential, or withheld from RPC, by Defendants.

70. As a proximate result of Defendants' misconduct, RPC has suffered substantial damages.

WHEREFORE, RPC asks this Court to enter a judgment against Defendants for: (i) monetary damages in an amount according to proof; (ii) return of the Shares; (iii) prejudgment interest; and (iv) such other and further relief that is just and proper.

## COUNT V
**(Conversion – Against Defendants)**

71. RPC repeats paragraphs 1-39, as if fully set forth herein.

72. RPC owns the Shares.

73. RPC has demanded to Defendants to return the Shares to RPC. Demand was made on IFGX because (i) IFGX was involved in the entire process from the beginning application; (ii) Zecevic is IFGX's President; and (iii) Zecevic instructed RPC to contact Irene Black of IFGX for processing the return of the Shares.

74. Defendants have refused to return the Shares to RPC. Therefore, Defendants have

wrongfully exercised dominion and control over the Shares to the detriment of, and inconsistent with, RPC's ownership rights.

75. Upon RPC's demands for return of the Shares, Defendants were not authorized by RPC to assert any control over, manage, or dispose of the Shares and, notwithstanding, Defendants have wrongfully and permanently deprived RPC of its property.

76. In the event that Zecevic actually dematerialized the Shares and tried to cover up the transaction by saying to RPC, among other things, he needed more time to do such, RPC would be entitled to 65% of the received proceeds.

WHEREFORE, RPC asks this Court to enter a judgment against Defendants for: (i) monetary damages in an amount according to proof; (ii) return of the Shares; (iii) prejudgment interest; and (iv) such other and further relief that is just and proper.

Dated: September 19, 2022

Respectfully submitted,

**SALLAH ASTARITA & COX, LLC**
*Counsel for RPC*
3010 North Military Trail, Suite 210
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/James D. Sallah
**James D. Sallah, Esq.**
Fla. Bar No. 0092584
Email: jds@sallahlaw.com
**Patrick J. Rengstl, P.A.**
Fla. Bar No. 0581631
pjr@sallahlaw.com